UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jennifer Gregory,                          :
    Plaintiff,                        :
                                           :
    v.                                :  File No. 2:08-CV-150
                                           :
Metropolitan Life Ins. Co. and            :
American Airlines, Inc. c/o               :
American Eagle, Inc. and                   :
Executive Airlines,                        :
    Defendants.                       :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Doc. Nos. 45, 49, 57, 60, 66)

Plaintiff Jennifer Gregory brings this action
against Defendants American Airlines, Inc. ("American")
and Metropolitan Life Insurance Co. ("MetLife") to
recover disability insurance benefits under the Long Term
Disability ("LTD") Plan provided by her former employer,
American.  The LTD Plan, which is governed by the
Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is self-funded
through contributions of American employees into a trust.
The employer, American, is the plan administrator and
claims for benefits under the LTD Plan are processed by a
third-party claims processor, MetLife.

Pending before the Court are: (1) Plaintiff's Motions for Summary Judgment (Docs. 45 and 66); (2) American's Cross-Motion for Summary Judgment (Doc. 49), which has been joined by MetLife (Doc. 58); (3) MetLife's Motion to Dismiss (a) any claim made by Plaintiff against MetLife under ERISA § 502(c)(1)(B) for MetLife's alleged violation of 29 C.F.R. § 2560.503-1(h)(2)(iii) and (b) any state law "insurance bad faith" claim against MetLife (Doc. 57); and (4) Plaintiff's Objection to American's Submission of Evidence Outside the Administrative Record (Doc. 60).

For the reasons stated below, I recommend that the District Court DENY the Plaintiff's Motion for Summary Judgment to the extent it seeks an award of benefits (Doc. 45), DENY the Plaintiff's Motion for Summary Judgment on the issue of plan participation (Doc. 66), DENY American and MetLife's Cross-Motion for Summary Judgment (Doc. 49), and REMAND the matter for a second level appeal before American's Pension Benefits Administration Committee ("PBAC"). In addition, I recommend that the Court GRANT MetLife's Motion to Dismiss Plaintiff's Request for Imposition of Fines under

ERISA (Doc. 57) and SUSTAIN the Plaintiff's Objection to American's Submission of Evidence Outside the Administrative Record (Doc. 60).

## I. FACTS

Plaintiff was formerly employed by American Eagle, Inc., a subsidiary of American Airlines, Inc. (collectively referred to herein as "American"), as a commercial airline pilot. During Plaintiff's employment with American, American offered disability plan benefits to its employees under an Optional Short Term Disability ("OSTD") Plan and a Long Term Disability ("LTD") Plan. (Administrative Record "AR" 226-380). Although they share a common summary plan description and only one application for benefits is required, the plans are separate and distinct welfare benefit plans. They are funded separately and described separately to American employees in the employee benefit book. The OSTD is funded through an insurance trust and the LTD Plan is self-funded through employee contributions. MetLife processes claims for both plans. (AR 241, 272). Plaintiff participated in both the OSTD and LTD Plans while employed by American. Although her last day at

work for American was on March 9, 2003 (AR 62, 91),
Gregory was a plan participant until midnight May 1,
2004. (Doc. 78).

**A. Plaintiff's Pregnancy Claim**

In March 2003, because her pregnancy prevented her
from performing her job duties, Plaintiff applied for
benefits under the OSTD Plan. (AR 60). MetLife
apparently assigned two claim numbers to this claim,
580303216139 and 580303254653 (referred to herein as "the
580 claim numbers"). *Id.*

Gregory appealed from an initial denial of
benefits. After the initial denial of the claim (AR 60,
62, 72, 88, 89), on July 18, 2003, MetLife approved
Plaintiff for OSTD and LTD benefits through November 20,
2003, five weeks after her estimated delivery date (AR
91). In its July 18, 2003 letter approving the claim,
MetLife inexplicably made reference not only to the 580
claim numbers referenced in its earlier correspondence,
but also to a new claim number, 810307181701 (referred to
herein as "the 810 claim number"). (AR 91).

## B. Plaintiff's Restless Leg Syndrome Claim

In November 2004, Plaintiff notified MetLife by telephone that she wished to pursue benefits under the LTD Plan because she had developed a condition known as restless leg syndrome ("RLS"). (AR 10-11.)[1] Thereafter, Plaintiff provided MetLife with the forms required to open a claim for benefits under the LTD Plan based on her RLS. (AR 93-132). There appear to be two separate applications for LTD in the administrative record, each alleging a different onset date for the RLS. (AR 96-97, 131-132).

By letter dated June 9, 2005, MetLife informed Plaintiff that her claim for benefits under *the OSTD Plan* was denied. (AR 138). Although the letter made no mention of Plaintiff's claim for benefits under *the LTD Plan*, it referenced a new claim number, 330505318886 (referred to herein as "the 330 claim number"), and clearly related in substance to Plaintiff's RLS claim. (AR 138-140). For example, the letter refers to Dr.

---

[1]

Although the record indicates that Plaintiff advised a MetLife representative by telephone on November 8, 2004 that her RLS was diagnosed in *April* 2004 (AR 10), the forms Plaintiff submitted to MetLife thereafter indicate the RLS was diagnosed in *March* 2004 (AR 94, 96, 100-103).

Salzman's indication that Plaintiff's "diagnosis is restless leg syndrome" (AR 138, ¶ 3), and concludes that, "[o]verall, there is no indication of a sustained impairment due to restless legs [sic] syndrome of a severity to preclude a return to work" (AR 139, ¶ 5). In the June 9, 2005 letter, MetLife advised Plaintiff that she could appeal MetLife's decision by sending a written request for appeal to MetLife Disability within 180 days. (AR 139, ¶ 6).

In response to MetLife's June 9, 2005 letter, Plaintiff sent a letter to MetLife on June 24, 2005. (AR 141). That letter referenced the 580 claim numbers used with respect to Plaintiff's pregnancy claim, as well as a new claim number, 700505318140 (referred to herein as "the 700 claim number"). *Id.* In the June 24, 2005 letter, Plaintiff questioned why MetLife's June 9, 2005 letter referred to *OSTD* benefits, when she had exhausted those benefits and was requesting *LTD* benefits, and stated that Plaintiff had spoken with "too many people" at MetLife for over a year, and had received "a lot of mis-information [sic]." *Id.* In closing, Plaintiff requested a copy of her "entire claim file." *Id.* A

MetLife representative attempted to contact Plaintiff on June 24, 2005 to address the concerns stated in her letter of that date, but was unable to reach her.  (AR 46).  MetLife's internal notes of that effort reveal that a MetLife representative sought to explain to Gregory that the reference to the short term benefit plan in the June 24th letter was because Gregory had both short term and long term disability coverage.  (AR 46).

The administrative record reveals minimal contact between Gregory and MetLife following the June 24, 2005 letter until October 17, 2006.  The record reveals only a telephone call from Gregory to MetLife informing MetLife of the date of her appointment with "Social Security" on November 7, 2005.  (AR 16).  The reason for this call is explained in a letter dated October 23, 2006 from Gregory to MetLife in which she wrote that "Tyler", presumed to be Tyler Lloyd, a MetLife representative, "told me to apply for Social Security disability" because Gregory's LTD claim "couldn't be processed without that".  (AR 160).

From October 17-26, 2006, Plaintiff had a number of telephone conferences with MetLife representatives, and

sent several letters to five different MetLife
representatives ("Cozetta," "Jamie," "John," "Mr.
Opastulu," and "Lee Hausfeld").  (AR 16-21, 143, 147,
151-152, 157-158, 162, 182).  Through these
communications, Plaintiff requested a status report
regarding her LTD claim, attached updated medical
records, advised of her new contact information, and
advised that she still had not received a copy of her
claim file.  *Id.*  Of particular note, in a letter dated
October 23, 2006, Plaintiff stated that she "wrote in a
formal letter of appeal [regarding her RLS claim] on June
24, 2005" because she "DIDN'T WANT ANYTHING CLOSED."  (AR
157-158).  In the same letter, Plaintiff re-stated that
she had received "a lot of misinformation" from MetLife
representatives and had been "passed around to too many
people," and stated that the June 24th letter was her
formal request to open her LTD claim and as an appeal.
*Id.*  Finally, in the October 23, 2006 letter, Plaintiff
again requested a copy of her claim file.  *Id.*

Following Plaintiff's communications with MetLife
in October 2006, MetLife investigated and evaluated
Plaintiff's RLS claim.  (AR 21-31, 152, 163-197, 202).

On November 3, 2006, MetLife Disability Appeals
Specialist Les Hausfeld sent a letter to Plaintiff
referencing the 330 claim number and stating that MetLife
was "continuing [its] review" of Plaintiff's "disability
claim" and would notify Plaintiff of its determination
"when the appeal review [was] complete." (AR 163). The
letter specifically noted that Metlife would need an
additional 45 days to complete its review. On November
20, 2006, Hausfeld sent another letter to Plaintiff, this
time referring to the 810 claim number, but again stating
that it was "reviewing [Plaintiff's] Long Term Disability
Claim." (AR 181). Hausfeld described to Gregory the
efforts to obtain medical records necessary to consider
her claim. On November 3rd, MetLife scheduled a
neurological and endocrinology evaluation. (AR 165-169).
On November 14, 2006 Gregory underwent these evaluations.
The evaluations were conducted by a board certified
neurologist who noted her functional limitations and the
resulting safety concerns and a board certified
endocrinologist, who found no impairment from an
endocrinology perspective. (AR 171-179). On November
20, 2006 and again on November 28, 2006 MetLife wrote to

Gregory's physician seeking medical records in connection with their claim review.  (AR 180, 184).  Finally, on December 27, 2006, Hausfeld sent a letter to Plaintiff, indicating that MetLife was "continuing [its] review of [Plaintiff's] disability claim," and advising that Plaintiff would be notified in writing of MetLife's "determination when the appeal review is complete."  (AR 202).

Oddly, however, on December 28, 2006, Hausfeld sent a fourth letter to Plaintiff which stated that "MetLife [would] not be conducting [Plaintiff's] appeal review" because the PBAC "handles the appeals for Long Term Disability claims."  (AR 203).  Soon thereafter, on January 3, 2007, MetLife sent Plaintiff a copy of her claim file.  (AR 204).

On January 12, 2007, in response to Hausfeld's December 28, 2006 letter, Plaintiff faxed a letter to Hausfeld, wherein she stated that she was unable to file an appeal with the PBAC because, pursuant to American's Summary Plan Description, in order to file a final appeal with American, "MetLife must deny [Plaintiff's] initial LTD claim and also deny a Second Review appeal," but

Plaintiff had not received a denial letter from MetLife *with respect to her LTD claim*. (AR 208). Plaintiff requested a copy of MetLife's "initial LTD claim denial letter," as well as a copy of MetLife's "denial of [its] Second Review." *Id.*

On January 25, 2007, MetLife sent a final letter to Plaintiff which, seemingly in conflict with statements made in MetLife's December 28, 2006 letter, stated that MetLife had "completed a second review of [Plaintiff's] entire claim," and had determined that its "previous decision to **terminate** [Plaintiff's] disability benefits will not change" due to the fact that Plaintiff's "request for appeal was provided to MetLife after [her] 90 day time period to appeal." (AR 209). The letter advised Plaintiff that, if she disagreed with MetLife's determination on her Request for Second Review, she could file a formal appeal with the PBAC. *Id.* Also noteworthy, MetLife's January 25, 2007 letter referenced a "letter [ ] dated July 18, 2005" (*id.*), but there is no such letter in the record. The parties agree that MetLife's reference to a "July 18, 2005" letter was a mistake, and in fact, MetLife intended to refer to the

July 18, *2003* letter described above, wherein MetLife approved Plaintiff's pregnancy claim.  (AR 91).

### C. Plaintiff's Amended Complaint

Almost 18 months after having received MetLife's January 25, 2007 denial letter, on July 23, 2008, Plaintiff filed this lawsuit against American and MetLife, seeking, among other things, a direct award of LTD benefits based on Plaintiff's RLS claim.

On August 27, 2008, Plaintiff filed an Amended Complaint.  The First Count alleges that Defendants violated ERISA law and regulations in their handling of Plaintiff's LTD claim.  (Doc. 10, ¶¶ 47, 50-54.)  The Second and Fourth Counts allege breaches of fiduciary duty on behalf of each Defendant, respectively.  (*Id.* at ¶¶ 56.5, 62.)  These two counts have since been dismissed by Order dated March 19, 2009 (Doc. 70).  The Third Count alleges that all actions and omissions of MetLife are attributed to American under the law of agency (*id.* at ¶ 59), and re-alleges that Plaintiff is entitled to benefits under the LTD Plan (*id.* at ¶ 60).

More specifically, the Amended Complaint alleges that Defendants' denial of Plaintiff's LTD claim was

arbitrary and capricious, that Defendants exhibited bad faith in their handling of Plaintiff's LTD claim, that MetLife failed to provide Plaintiff with a full and fair review of her LTD claim, and that MetLife failed to comply with ERISA regulations and the terms of the LTD Plan. (Doc. 10, ¶¶ 50-53.) Additionally, the Amended Complaint alleges that MetLife acted negligently in its handling of Plaintiff's LTD claim, and that any further attempt to obtain LTD benefits through the administrative process would be futile. (*Id.* at ¶¶ 54-55.)

Plaintiff seeks a determination that she is disabled within the meaning of the LTD Plan, payment of all long-term disability benefits under the LTD Plan, continued payment of all long-term disability benefits under the LTD Plan unless her entitlement to such benefits is properly terminated under the Plan, interest on all long-term disability benefits withheld, attorney fees and costs of suit, and punitive damages.[2] (Doc. 10, p. 11, ¶¶ a-g.)

---

[2]The Amended Complaint also seeks damages for breach of fiduciary duty, but given the Court's dismissal of Plaintiff's breach of fiduciary duty claims, the request is no longer viable.

## D. Evidence Outside of the Administrative Record

After the instant motions were filed American filed declarations to establish facts not in the administrative record. A declaration of American employee Adrienne C. Schneider has been submitted to establish that Gregory was specifically advised of her rights and obligations under American's employee benefit plans while out on leave of absence, including the option and cost of continued participation in the long term disability plan. An accompanying declaration by American's disability analyst, Christine Mankins, attested to the fact that Gregory stopped making contributions to the plan on April 30, 2003 and that her disability coverage therefore lapsed on May 1, 2003 as she was no longer a plan participant. (Doc. 52). On April 7, 2009 American filed an amended declaration from Mankins, this time stating that Gregory was a plan participant up to May 1, 2004 because up until that time Gregory was on Sick Leave of Absence and therefore her coverage continued until the May, 2004 date. (Doc. 78). Gregory objects to the Court's consideration of this information.

## II. __Standard of Review__

Summary judgment is granted if no genuine issue of material fact exists and, based on undisputed facts, the moving party is entitled to judgment as a matter of law. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). In deciding whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all inferences in the light most favorable to the nonmoving party. *Id.* (citing *Ford v. McGinnis*, 352 F.3d 582, 287 (2d Cir. 2003)). In cases such as this, where both parties have moved for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Murray v. Int'l Bus. Machines Corp.*, 557 F. Supp. 2d 444, 448 (D. Vt. 2008) (quoting *Schwabenbauer v. Bd. of Educ. of City School Dist. of City of Olean,* 667 F.2d 305, 314 (2d Cir. 1981)).[3]

---

[3] As noted by Defendants, Plaintiff did not file a Statement of Undisputed Facts in support of her "Motion for Summary Judgment on the Administrative Record," in violation of Local Rule 7.1(a)(2).

The parties dispute what standard of review applies with respect to the Court's review of MetLife's decision to deny Plaintiff LTD benefits based on her RLS claim. According to Plaintiff, the Court should review this matter *de novo*, given that neither MetLife nor American made a determination on the claim, and thus there is no decision to which the Court may defer. *See Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 244 (2d Cir. 2007). Defendants, on the other hand, argue in favor of an arbitrary and capricious standard.

Generally, a denial of benefits challenged under ERISA is reviewed under a *de novo* standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, if the subject ERISA plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, the court is limited to an arbitrary and capricious standard of review. *Id.; see*

---

This was presumably due to Plaintiff's belief that resolution of her Motion does not require the Court to identify disputed facts, but rather, to determine whether the administrative record contains sufficient evidence to support the determinations made and procedures followed by Defendants with respect to Plaintiff's RLS claim. The Court finds that, given the unique procedural posture of this case, Plaintiff was excused from filing a Statement of Undisputed Facts with her Motion.

*also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614,

622 (2d Cir. 2008).  In *Murray v. Int'l Bus. Machines*

*Corp.*, 557 F. Supp. 2d 444, 449 (D. Vt. 2008), Chief

Judge Sessions explained the arbitrary and capricious

standard:

> [W]here the written plan documents confer
> upon the plan administrator the
> discretionary authority to determine
> eligibility, we will not disturb the
> administrator's ultimate conclusion unless
> it is arbitrary and capricious.  The
> arbitrary and capricious standard of review
> is highly deferential to the plan
> administrator's determination, and the
> Court may overturn a decision to deny
> benefits only if it was without reason,
> unsupported by substantial evidence or
> erroneous as a matter of law.

(Internal citations and quotations omitted.)

American's Administrative Services Agreement

("ASA") with MetLife expressly states that both MetLife

and American have "discretionary authority to determine

eligibility for benefits, to construe the terms of the

Plan, and to determine the validity of charges submitted

for reimbursement under the Plan."  (AR 373).  Thus,

Defendants clearly reserved discretionary authority to

decide Plaintiff's benefits claims, and the arbitrary and

capricious standard applies to this Court's review of such decisions.

There are two major problems, however, with respect to applying the arbitrary and capricious standard in this case. First, given the confusing correspondence sent to Plaintiff by MetLife, it is unclear which of MetLife's "decisions" the Court should review with respect to Plaintiff's RLS claims. Second, given the ambiguity in MetLife's handling of Gregory's RLS claim, it is unclear whether Plaintiff was given a proper opportunity to appeal MetLife's denial of the claim to American.

Here, as in *Krauss v. Oxford Health Plans, Inc.*, *supra*, Plaintiff essentially claims that MetLife (and American, through an agency theory) mishandled her claim through nondisclosure and misleading statements, among other things. Thus, as in *Krauss*, Plaintiff is in essence claiming that Defendants denied her "the full and fair review to which [she was] entitled under ERISA § 503(2), 29 U.S.C. § 1133(2)." *Id.*; see Am. Compl., ¶ 52. A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review. *Id.* (citations

omitted).  Although in *Krauss* the Second Circuit found that the relevant information had been finally disclosed, and thus the Court was "confident that administrative remand would be futile" (*id.*), this Court cannot similarly find given the facts of this case, as perhaps best illustrated by the shifting information on the dates of Gregory's plan participation.

Rather, as explained in detail below, the record supports Plaintiff's understandable confusion regarding whether, and when, she received an initial denial letter and an appeal denial letter from MetLife, and on what medical records (if any) or other facts these letters were based.  Moreover, if Plaintiff was not, as Defendants now claim, a plan participant when her RLS was diagnosed and when she submitted the LTD claim based thereon, American is the proper entity to make that initial determination, not this Court.  *See, e.g., Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990) ("Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators . . . Such a procedure would frustrate the goal of prompt resolution

19

of claims by the fiduciary under the ERISA scheme.")  But American never had an opportunity to review either Plaintiff's status as a plan participant or her RLS claim.

As developed more fully below, I recommend that the Court find that the appropriate course in this case is to remand to the plan administrator for further proceedings, including the submission of evidence regarding the dates of her plan participation and disability onset. *See Pepe v. The Newspaper and Mail Deliverers' - Publishers' Pension Fund, the Trustees of the Newspaper and Mail Deliverers' - Publishers' Pension Fund*, 559 F.3d 140 (2d Cir. 2009).  This conclusion is compelled under either standard of review by the confusing information provided to the plaintiff in the correspondence from defendant MetLife.  On remand, the evidence may yet ultimately show, as now argued by the defendants, that Ms. Gregory was not a plan participant during the relevant time period or not disabled during her participation which ended on May 1, 2004, and is therefore not eligible for long term disability benefits.

## III. Analysis

### A. General Considerations

ERISA contains a general requirement that an employee benefit plan, of which the parties agree American's LTD Plan is one, must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

The nature of the information that must be given to a plan member upon a denial of benefits and the "full and fair review" to which the member is then entitled under this section have been developed through regulation. For example, 29 C.F.R. § 2560.503-1(g) states that when a claim for benefits is denied, written notice must provide "[t]he specific reason or reasons for the denial"; the "[s]pecific reference to pertinent plan provisions on which the denial is based"; "[a] description of any

additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary"; and "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." *Juliano v. HMO of New Jersey*, 221 F.3d 279 (2d. Cir. 2000).

A cause of action under ERISA accrues, and the statute of limitations period begins to run, "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Miles v. New York Teamsters Conference Pension Fund*, 698 F.2d 593, 598 (2d. Cir. 1983). Here, the plan provides for a two year statute of limitations.

**B. "First Level Appeal"**

American's Employee Benefits Guide provides that, if an employee receives an adverse benefit determination, as Plaintiff did in this case, the employee may ask for a "First Level Appeal" review from the claims processor or benefit administrator. (AR 291, ¶ 1). The Guide continues: "[The employee] has 180 days following the receipt of a notification of an adverse benefit

determination within which to file a [F]irst Level

Appeal." *Id.*

Defendants contend Plaintiff's June 24, 2005 letter

to MetLife (AR 141) should not be construed as a first

level appeal of MetLife's denial of Plaintiff's RLS

claim, and thus Plaintiff failed to timely appeal such

denial in writing.  The Court disagrees.

American argues Plaintiff's June 24, 2005 letter

was not a proper appeal of MetLife's denial of the RLS

claim because it was addressed to the wrong party.

According to American, the letter should have been

addressed to MetLife Disability at PO Box 14592 in

Lexington, Kentucky, as instructed in MetLife's June 9,

2005 letter to Plaintiff.  (Doc. 50, ¶ 36.)  But

Plaintiff's letter (AR 141) understandably was addressed

to MetLife employee Tyler Lloyd, the individual who

signed MetLife's June 9, 2005 letter (AR 140), and

understandably was sent to MetLife, American Airlines

Claims Unit at PO Box 14590 in Lexington, Kentucky, which

address is the return address on MetLife's June 9, 2005

letter to Plaintiff and the address listed in American's

Employee Benefits Guide as the proper address to send

23

correspondence regarding OSTD and LTD benefits. (AR 138, 235).

Significantly, despite its argument that Plaintiff's June 24, 2005 letter was incorrectly addressed, neither American nor MetLife argue that MetLife did not receive that letter. In fact, the record reflects that, even though one MetLife representative told Plaintiff on October 17, 2006 that MetLife had not received the letter (AR 16), prior to that date, on August 3, 2005, well within the 180-day appeal period, another MetLife representative discussed the contents of the letter with Plaintiff in a telephone conference. (AR 46). The confusion regarding MetLife's receipt of Plaintiff's letter appears to have been due in part to the fact that MetLife assigned multiple claim numbers to Plaintiff's RLS claim. (AR 22, 52). (See generally, AR 1-40 which relate to the 810 claim number, AR 41-42, which relate to the 700 claim number, and AR 43-53 which relate to the 330 claim number). The June 9th letter also references the *short term* disability plan rather than the long term disability plan. MetLife argues that its reference in its June 9th letter to the Short Term

Disability Plan is of little significance because only one application for benefits—whether short term or long term benefits are sought-is required of an applicant. This assertion ignores the fact that the plan participants are told that the two plans are distinct benefit plans, and are identified by separate plan identification numbers in the employee handbook. (AR 159).

MetLife argues Plaintiff's June 24, 2005 letter cannot reasonably be construed as a first level appeal because the letter neither states that it is intended to be an appeal nor presents any reasons for reversing MetLife's denial of Plaintiff's claim, but rather, merely asks a question and requests documents. (See Doc. 56-2, p. 16, ¶ 1.) In support of this argument, MetLife cites *Swanson v. Hearst Corp. Long Term Disability Plan*, 2009 WL 361469 (S.D. Tex. Feb. 11, 2009), a recent case out of the Southern District of Texas. In that case, however, the claimant's alleged appeal letter explicitly stated her "notice of *intention* to appeal," which the Court found "clearly indicated only *an intent to pursue an appeal some time in the future* and in no way could be

construed as constituting an actual appeal" (*id.* at *5 (internal quotations omitted) (emphasis in original)). Here, Plaintiff's June 24, 2005 letter does not state, and cannot be construed to imply, any *future* intent to appeal. Rather, the letter conveys a *present* disagreement with MetLife's denial of Plaintiff's disability claim by stating that MetLife's denial letter "doesn't make sense to [Plaintiff]." (AR 141).

MetLife also relies on *Swanson* for the proposition that Plaintiff's June 24, 2005 letter should not be construed as an appeal because it does not contain any reasons or arguments for reversing MetLife's denial of Plaintiff's RLS claim. (See Doc. 56-2, p. 17, ¶ 2.) Plaintiff's letter does state, however, a reason for such an appeal – that MetLife's June 9, 2005 denial letter improperly considered Plaintiff's earlier *STD* claim rather than her present *LTD* claim. (AR 141).

For these reasons, and also considering that MetLife itself later treated Plaintiff's RLS claim as if it had been timely appealed (see AR 163, 180, 181, 202), for purposes of the pending Motions, I recommend that the Court conclude that the Plaintiff's June 24, 2005 letter

was a timely first level appeal of MetLife's June 9, 2005 denial letter. *See Johnson v. Federal Ins. Co.*, No. 2:06 CV 1791, 2007 WL 1232209, at *4 (W.D. La. April 25, 2007) (finding that "ongoing correspondence" between claimant, claims adjustor, and claimant's doctor was, "at the very least, indicative of a *de facto* reopening of [the] claim").

### C. Statute of Limitations

MetLife and American argue that if the June 24th letter is construed as an appeal, then Metlife had no more than 90 days under the plan to issue its decision. (AR 291). Thus, MetLife's appeal determination would have to have been made by September 24, 2005. MetLife's failure to make that decision is therefore considered a "deemed denial" under the ERISA claims procedure regulation found at 29 C.F.R. § 2560.503-1(l) (providing that if a plan fails to follow ERISA's procedural requirements, including its time limits, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide

a reasonable claims procedure that would yield a decision
on the merits of the claim"). That presumed "deemed
denial" would have triggered the 180 day period under the
plan to file a second level appeal or the two year period
in which to file an action in this court. (AR 293).
Since Gregory did not file an appeal to the PBAC, and did
not file this action until July 2008, both defendants
argue that the action is now barred by the plan's two
year statute of limitations.

Gregory responds that (1) neither American nor
MetLife has raised the affirmative defense of the statute
of limitations in its answers to the complaint and
therefore the defense is waived and (2) Metlife should be
equitably estopped from asserting the statute of
limitations because of their active and continuing review
of her claim from October 2006 to January 2007, which
Gregory now asserts she relied upon to her detriment.

"A claim that a statute of limitations bars a suit
is an affirmative defense, and, as such, it is waived if
not raised in the answer to the complaint." *United
States v. Landau*, 155 F.3d 93 (2d. Cir. 1998), quoting
*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967

F.2d 742, 751-52 (2d Cir. 1992) (citing Fed. R. Civ. P.
8(c)).

American did not raise the statute of limitations
as an affirmative defense in its Answer.  (Doc. 16).
American did state in its Answer that it was reserving
the right "to raise other or further defenses" at trial.
However this type of general reservation of defenses
fails to comply with Fed. R. Civ. P. 15 and has been
recognized as a legal nullity having no force or effect.
See, *U.S. v. Global Funding Mortg. Funding Inc.*, 2008 WL
5264986, at *5 (C.D. Cal. May 15, 2008)(citing *Messick v.
Patrol Thomas Solvent Co.,* 714 F. Supp. 1439, 1452 (W.D.
Mich. 1989)).  Therefore, American, the plan
administrator, has waived the statute of limitations as a
defense.

MetLife, on the other hand, did make a valid
assertion of the defense in its Answer. (Doc. 15, p.7).
Metlife's argument that the action has been filed outside
of the two year limitations period is compelling.
However the Court is mindful of the active and continuing
review of the claim that occurred from October 2006 until
the denial letter in January 2007.  See, *Johnson v.*

*Federal Ins. Co.*, No. 2:06 CV 1791, 2007 WL 1232209, at
*4 (W.D. La. April 25, 2007) (finding that "ongoing
correspondence" between claimant, claims adjustor, and
claimant's doctor was, "at the very least, indicative of
a *de facto* reopening of [the] claim").

Gregory responds that the events that occurred from
October 2006 to January 2007 amount to equitable
estoppel, with the upshot being her complaint is
therefore timely. Promissory or equitable estoppel is
available on ERISA claims only in "extraordinary
circumstances." *Paneccasio v. Unisource Worldwide, Inc.*,
532 F.3d 101 (2d Cir. 2008); *Devlin v. Transp. Commc'n
Int'l Union*, 173 F.3d 94, 101 (2d Cir. 1999) (internal
quotation marks omitted); see *Bonovich v. Knights of
Columbus*, 146 F.3d 57, 62 (2d Cir. 1998); *Lee v.
Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). To prevail
on a promissory or equitable estoppel claim under ERISA,
a claimant must prove (1) a promise, (2) reliance on the
promise, (3) injury caused by the reliance, and (4) an
injustice if the promise is not enforced, and the
claimant must adduce  facts sufficient to satisfy an
`extraordinary circumstances' requirement. *Paneccasio*,

532 F.3d at 109; *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (internal quotation marks omitted) (alterations in original).  For example, in *Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006) the Court of Appeals concluded that the defendant was equitably estopped from denying disability benefits where the plan participant relied to his detriment on the communications from the defendant insurance company.  *Id.* at 447-448.

Gregory's inaction from June of 2005 to October of 2006 is puzzling, though perhaps attributable to the confusing nature of the June 9, 2005 letter from MetLife and the instruction from the Metlife employee to seek a determination from the Social Security Administration on her disability.  (AR 16, 160).  Nevertheless, Gregory was told in the fall of 2006 that MetLife was actively reviewing her claim, a claim she reasonably believed to be her first level appeal.  To illustrate, on November 3, 2006 MetLife advised Gregory in writing that "we may need an additional 45 days to render a decision."  (AR 163).  Surely, continued informal review of a claim is to be encouraged and therefore it has been held that informal

review does not renew an action for statute of limitations purposes.  *Morgan v. Laborers Pension Trust Fund*, 433 F. Supp. 518, 525 (N.D. Cal. 1977).  But what occurred here was more than an informal review.  Metlife solicited medical records from Gregory's physicians.  Metlife sent Gregory to two board certified physicians, an endocrinologist and a neurologist for medical assessments and Gregory dutifully attended these sessions.  Gregory reasonably relied on these events as at least a reopening of her claim.  The relevant question with regard to equitable tolling is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action.  *Veltri v. Building Service 32B Pension Fund*, 393 F.2d 318 (2d. Cir. 2004).  A reasonable person would not think of suing his or her employee benefit plan at the same time the plan's representative was sending him or her to multiple medical evaluations.  The two year ERISA statute of limitations therefore commenced running with the January 25, 2007 letter denying Gregory coverage under the plan.  Gregory acted reasonably when she relied upon Metlife's

representations about the ongoing review of her claim, including the scheduled medical evaluations by specialists, and that reliance was to her unjust detriment.  I therefore recommend that the Court conclude that equitable tolling preserved Gregory's cause of action and that her complaint was filed timely.

**D. Adequacy of the January 25,2007 Notice as a Second Level Appeal**

American's Employee Benefits Guide states: "*Upon [an employee's] receipt of the First Level Appeal decision notice* upholding the prior denial - if you still feel you are entitled to the denied/withheld benefit - you must file a Second Level Appeal with the PBAC."  (AR 291, ¶ 4) (emphasis added).  Defendants contend MetLife's January 25, 2007 letter, submitted in response to Plaintiff's request for an appeal, sufficed as MetLife's "First Level Appeal decision notice" and properly upheld MetLife's decision to deny Plaintiff's RLS claim.  (AR 209).  In fact, the January 25th letter from Metlife only served to muddle the facts even more.  It is unclear whether that letter related to Gregory's pregnancy claim or her RLS claim.  This confusion is mainly due to: (a) the general confusion regarding which claim number(s) had been

assigned to Plaintiff's pregnancy claim and which had
been assigned to her RLS claim, and the letter's
reference to only the 810 claim number and not the 580 or
330 claim numbers; (b) the letter's reference to a July
18, 2005 letter (*id.* at ¶ 2) which all parties agree
never existed; (c) the fact that the letter's reference
to a July 18, 2005 letter was meant to refer to a July
18, 2003 letter, but the 2003 letter was dated prior to
Plaintiff even being diagnosed with RLS and thus prior to
Plaintiff initiating her RLS claim; and (d) the letter's
reference to MetLife's "previous decision to *terminate*
[Gregory's] disability benefits" as to her RLS claim (*id.*
at ¶ 3) (emphasis added), when there was no prior
decision to "terminate" benefits on Gregory's RLS claim
because she was never granted benefits on that claim in
the first place.

MetLife acknowledges the confusion reflected in the
record with respect to Plaintiff's RLS claim and
particularly with respect to whether that claim was a new
claim or a continuation of Plaintiff's pregnancy claim.
(See Doc. 56-2, p. 14, ¶ 1 ("Admittedly, . . ., there was
some uncertainty as to whether Gregory's October 2006

appeal was appropriately . . . submitted as a first level appeal to MetLife or whether it should have been submitted as second level appeal to the PBAC.  In part, this turned on the somewhat difficult question of whether Gregory's 2004 RLS disability claim was a continuation of her 2003 pregnancy disability claim or a new claim.")).  This confusion is continued in MetLife's January 25, 2007 denial letter.

Given the ambiguous language contained in the January 25, 2007 letter, which reasonably could have been interpreted to apply to Plaintiff's pregnancy claim and not to her RLS claim, I recommend that the Court conclude that MetLife failed to provide Plaintiff with a proper first level appeal decision notice with respect to the initial denial of her RLS claim, as required by American's Employee Benefits Guide (AR 291, ¶ 4) and 29 U.S.C. § 1133(1) ("[E]very employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant . . . .").  Therefore,

Plaintiff was not afforded a "reasonable opportunity" to appeal to the PBAC, as required by 29 U.S.C. § 1133(2), and the matter must be remanded to the PBAC to review MetLife's denial of the RLS claim. *See Veltri*, 393 F.3d at 324 ("Defendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded from refusing to accept an untimely administrative appeal, or from asserting failure to exhaust administrative remedies as a defense.").

**E. Plaintiff's Objection to American's Submission of Evidence Outside the Administrative Record**

American asks the Court to consider evidence outside the administrative record, namely the Declarations of Christine Mankins (as amended) and Adrienne Schneider for the purpose of establishing that Plaintiff was not a plan participant when she filed her RLS claim. (See Doc. 51, pp. 6-7.) Gregory objects to this submission, arguing that the defendants have already admitted that Gregory was a plan participant in their Answers to the Amended Complaint and in motions before this Court. This objection fails however because the defendants only admitted in their respective Answers that Gregory was a plan participant at an unspecified time. In their

Answers, defendants did not admit that Gregory was a contributing plan participant at the time of her RLS disability. Further, Defendants' later references to Gregory as a "participant" in their various motions and responses are not binding admissions. The defendants accurately point out that motions are not binding upon them as pleadings under Fed. R. Civ. P. 7(a). *Burns v. Lawther*, 53 F.3d 1237 (11th Cir. 1995); *Structural Concrete Products, LLC v. Clarendon American Insurance Co.,* 244 F.R.D. 317 (E.D. Va. 2007); *Heise v. Olympus Optical Co. Ltd.,* 111 F.R.D. 1 (N.D. Ill. 1986).

American also invokes the doctrine of equitable estoppel, arguing that Gregory should be estopped from objecting to the Court's consideration of such evidence based on the fact that the evidence is not already a part of the administrative record due to Plaintiff's own inaction, i.e., Plaintiff's failure to appeal the denial of her claim to the PBAC, despite her receipt of numerous warnings to do so. (*Id.*) American's creative equitable estoppel argument fails for two major reasons. First, it was not merely Plaintiff's inaction which led to Plaintiff's failure to file an appeal with the PBAC, but

also MetLife's failure to provide Plaintiff with an understandable denial letter.  Second, neither American nor MetLife has explained why MetLife did not and could not have added the evidence to the administrative record at the time of its initial and subsequent review of Plaintiff's RLS claim.

Ultimately, the law does not favor American's position.  In fact, as Gregory accurately points out, the law clearly provides that, ordinarily, when reviewing an ERISA plan eligibility determination, "'the district court is limited to a review of the evidence in the administrative record *absent good cause to consider additional evidence*.'"  *Gaboriault v. International Business Machines Corp.*, 2006 WL 3304213 *1 (D. Vt. Nov. 13, 2006) (quoting *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 134-35 (2d Cir. 2001)) (emphasis added); *see also Zervos v. Verizon, N.Y., Inc.*, 277 F.3d 635, 646 (2d Cir. 2002).  The Second Circuit has held that a "demonstrated conflict of interest in the administrative reviewing body" can constitute "good cause."  *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 67 (2d Cir. 1997).  "The decision whether to consider evidence

beyond the administrative record lies in the discretion of the district court and is not disturbed absent an abuse of that discretion." *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 97 (2d Cir. 2003) (citing *Muller v. First Unum Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003)).

Nevertheless this Court should be mindful that where, as here, there has been no determination by a plan administrator, a federal court lacks jurisdiction to adjudicate benefit eligibility under an ERISA plan. *Peterson v. Continental Casualty*, 282 F.3d 112 (2d Cir. 2002). The Sixth Circuit explained the reasoning behind the general rule that district courts do not consider evidence beyond the administrative record in reviewing ERISA plan eligibility determinations:

> Nothing in [ERISA's] legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme. . . . If district courts heard evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.

*Perry v. Simplicity Engineering*, 900 F.2d 963, 966, 967 (6th Cir. 1990).

In this case, there is no reason to expand the Court's review of MetLife's denial of Plaintiff's RLS claim beyond the administrative record. Participation determinations are best made by the plan administrator. The defendants contend that a remand to the plan administrator to expand the record to include the evidence about Gregory's abandoned participation in the plan would be time consuming and futile and the Court should simply deny Gregory the benefits she seeks. The Court should decline the defendants' invitation to become a substitute plan administrator, particularly where, as here, Gregory was a plan participant through May 1, 2004. Moreover, she has had no opportunity to respond to information contained in the challenged declarations in course of the administrative process.

Accordingly, I recommend that the Court SUSTAIN Plaintiff's Objection to American's Submission of Evidence Outside the Administrative Record, and not consider such evidence in ruling on the pending Motions.

### F. Standing

In a reply to Gregory's opposition to the consideration to evidence outside of the administrative record, American argues for the first time that Gregory lacks standing to sue for the ERISA violations.

It is true that there is a limited class of plaintiffs that can bring claims under ERISA. Section 502(a)(3) of ERISA provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *See* 29 U.S.C. § 1132(a)(3)(2005); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005). In *Nechis*, the Circuit observed that the Supreme Court has construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA. See *Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under [§ 502(a)(3)]; it does not provide anyone other than participants,

beneficiaries, or fiduciaries with an express cause of action ....").  The Court has also held that § 502(a)(3) strictly limits the "universe of plaintiffs who may bring certain civil actions." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 247, (2000) (emphasis omitted).

But to rule on standing is to address the merits of the question of whether and when Gregory's participation ended.  Of course, here there has been no determination by the plan administrator as to whether or not Gregory discontinued her participation in the plan.  Gregory has alleged that her RLS disability commenced in March of 2004, arguably a time when she was a plan participant. (AR 129).  It appears therefore that she has at least a colorable claim for benefits.  *See Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 117-118 (1989).  Of course, at some point her participation ended.

This Court simply does not have jurisdiction to render a *de novo* determination of benefit eligibility. *Peterson*, 282 F.3d at 117.  Absent a determination by a plan administrator, federal courts are without jurisdiction to adjudicate benefit eligibility.  *Jones v.*

*Unum Life Assurance Co. Of America*, 223 F.3d 130, 140-41
(2d Cir. 2000).  In light of the recommendation to remand
this case to the plan administrator for a determination
concerning Gregory's eligibility, including, by
implication the question of whether or not she was a plan
participant when she became disabled, it is premature to
address the question of standing.[4]

### G. Motion for Summary Judgment on Plan Participation

Gregory has moved for summary judgment on the
discrete question of whether or not she was a plan
participant at the onset of her disability, arguing that
both defendants have admitted in their pleadings that she
was a plan participant (Doc. 66).

While it is true that the defendants have admitted
in some responses to Gregory's motions that *at some time*
Gregory was a plan participant, these statements are
simply not binding admissions.  In fact, the defendants
have made no admission in their pleadings that she was a
plan participant at the onset of her disability.  Of
course, Gregory has the burden of establishing that she

---

[4]

   As an aside, if Gregory was not a plan participant at the onset
of her disability an award of benefits would not be in the best
interests of the other plan participants.

was entitled to LTD benefits. *Gallagher v. Reliance Standard Life Insurance Co.*, 305 F.3d 264 (4th Cir. 2002). A review of the Answers shows that each defendant has adequately denied that Gregory was a plan participant at the relevant time. (Doc. 15, p.7, ¶4; Doc. 16, p.2, ¶5). As noted above, motions and other papers are not binding pleadings under Rule 7 of the Federal Rules of Civil Procedure. *Caine v. Hardy*, 905 F.2d 858 (5th Cir. 1990). Summary judgment on this issue is simply not appropriate at this time as there was no waiver of this defense. I therefore recommend that the plaintiff's motion (Doc. 66) be denied.

### H. MetLife's Motion to Dismiss Plaintiff's 29 U.S.C. § 1132(c) and 29 C.F.R. § 2560.503-1(h)(2)(iii) Claims

Although the claim is not specifically pled in her Amended Complaint, in her Motion for Summary Judgment, Plaintiff asserts that penalties in the amount of $48,800 should be assessed against MetLife under 29 U.S.C. § 1132(c) for MetLife's failure to timely provide Plaintiff with a copy of her claim file, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iii). (Docs. 45, 45-2). In response, MetLife argues that such a claim must be dismissed because (a) MetLife is not the plan administrator, and (b) damages

44

under § 502(c)(1)(B) are not available for an alleged violation of the regulations implementing § 503. The Court agrees with MetLife on the first point, and therefore need not address the second one.

The record reflects that American, not MetLife, is the "plan administrator" with respect to the LTD Plan, while MetLife is merely the Plan's "claims processor." (AR 272, 280-281). 29 U.S.C. § 1132(c)(1) requires that plan administrators comply with certain disclosure requirements mandated by ERISA, and states that if a plan administrator does not provide the required documentation, it is subject to fines of $100 per day dating from the date of refusal. But not all entities that provide employee benefits are "administrators" under ERISA. ERISA defines a plan "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated," and states that if there is no person so designated in the plan documents, the plan's "sponsor" is deemed to be the administrator. 29 U.S.C. § 1002(16)(A). ERISA further states that when a single employer establishes an ERISA-covered plan, that employer is deemed by law to be the sponsor. 29 U.S.C. §

1002(16)(B)(I).  Absent a specific declaration in Plan documents that an insurance company is the Plan administrator, the Court cannot infer co-administrator status.  *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d. Cir. 1998).

In this case, American's Employee Benefits Guide specifically designates American, not MetLife, as the LTD "Plan Sponsor and Administrator."  (AR 280-281). Therefore, MetLife cannot be found liable under 29 U.S.C. § 1132(c) and 29 C.F.R. § 2560.503-1(h)(2)(iii) for its failure to timely send Plaintiff a copy of her claim file. Given this ruling, the Court need not address MetLife's alternative contention that Plaintiff's claim for penalties under 29 U.S.C. § 1132(c) fails because ERISA § 502(c)(1)(B) statutory damages are not available for violations of regulations implementing ERISA § 503.

**I. MetLife's Motion to Dismiss Plaintiff's Bad Faith Insurance Claims**

Plaintiff argues in her Motion for Summary Judgment that she has satisfied the elements for proving a state law insurance bad faith claim against MetLife.  (Doc. 45, pp. 10-11.)  As with her claim for penalties under 29 U.S.C. § 1132(c), the claim is not clearly pled in

46

Plaintiff's Amended Complaint.  Moreover, Plaintiff cites no law to support allowance of such a claim in a case like this.  MetLife argues that a state law insurance bad faith claim may not survive in this case because the LTD Plan is a self-funded, employee benefit plan, not an insurance policy.  MetLife is correct in its analysis.

Although Vermont recognizes a claim for tortious bad faith brought by an insured against its insurer based on the insurer's unreasonable denial of coverage, "[a]s a necessary prerequisite, the plaintiff and defendant must have an insured/insurer relationship by virtue of a[n insurance] policy." *Peerless Ins. Co. v. Frederick*, 177 Vt. 441, 446 (2004) (citing *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 402 (1995) and *Kirkpatrick v. Merit Behavioral Care Corp.*, 128 F. Supp. 2d 186, 191 (D. Vt. 2000)).  There is neither an insurance policy nor an insured/insurer relationship with respect to the long-term disability employee benefit plan at issue here.  Rather, the record clearly reflects that the LTD Plan is an employee benefit plan which is self-funded by American's employees, and the relationship between Plaintiff and Defendants by virtue of the Plan is one of employee/plan

administrator/claim administrator, not insured/insurer.
(AR 241, 272).

Finally, MetLife correctly argues that even if a
state law insurance bad faith claim could survive in this
case, such a claim would be preempted by ERISA, which
preempts "any and all State laws insofar as they may . . .
relate to any employee benefit plan" covered by ERISA (29
U.S.C. § 1144(a)), because a state law insurance bad faith
claim would impermissibly purport to authorize remedies
beyond those set forth in ERISA's civil enforcement
scheme. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41,
54 (1987) ("The policy choices reflected in the inclusion
of certain remedies and the exclusion of others under
[ERISA] would be completely undermined if ERISA-plan
participants and beneficiaries were free to obtain
remedies under state law that Congress rejected in
ERISA.").

ERISA's "deemer clause" found at 29 U.S.C. §
1144(b)(2)(B) explicitly precludes application of ERISA's
"savings clause" found at 29 U.S.C. § 1144(b)(2)(A) to the
self-funded LTD Plan at issue in this case.  The "deemer
clause" states, in relevant part:

"Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts . . . ."

*See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause.").

## Conclusion

For these reasons, I recommend that the Court DENY the Plaintiff's Motion for Summary Judgment to the extent she seeks an order directly awarding her benefits (Doc. 45 and 66), DENY American and MetLife's Cross-Motion for Summary Judgment (Doc. 49), and REMAND the matter to the plan administrator for a second level appeal before the PBAC to determine the plaintiff's eligibility for long term disability benefits, including whether or not she was a plan participant at the onset of her disability.

In addition, I recommend that the Court GRANT MetLife's Motion to Dismiss (a) any claim made by Plaintiff against MetLife under ERISA § 502(c)(1)(B) for MetLife's alleged violation of 29 C.F.R. § 2560.503-

1(h)(2)(iii) and (b) any state law "insurance bad faith" claim against MetLife (Doc. 57); and SUSTAIN Plaintiff's Objection to American's submission of evidence outside the administrative record (Doc. 60).

Dated at Burlington, in the District of Vermont, this 3rd day of June, 2009.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 (ten) days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, a written objection which shall specifically identify the portion(s) of the proposed findings, recommendations, or report to which objection is made and the basis for such objection. Failure to file an objection within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a), 6(e).